# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| FRIENDS OF ANIMALS, a non-profit corporation,<br>777 Post Road, Suite 205<br>Darien, CT 06820<br><br>    *Plaintiff*,<br><br>  v.<br><br>SCOTT DE LA VEGA, in his official capacity as Acting United States Secretary of the Interior;<br>1849 C Street NW<br>Washington, D.C. 20240;<br><br>  and<br><br>UNITED STATES FISH & WILDLIFE SERVICE, an agency within the United States Department of the Interior,<br>1849 C Street NW<br>Washington, D.C. 20240<br><br>    *Defendants*. | Civ. No. _____<br><br><br><br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br><br><br>January 27, 2021 |

## INTRODUCTION

1.     Less than one week before the end of the Trump administration and the inauguration of a new president, and without any prior notice to the public, the United States Fish and Wildlife Service (FWS) entered into a long-term agreement with the National Rifle Association (NRA). The Memorandum of Understanding between FWS and the NRA ("MOU") obligates FWS to promote and expand hunting opportunities for the benefit of the NRA.

1

2. Congress never envisioned that the federal agency tasked with conserving this nation's wildlife would enter into an agreement with the nation's most powerful gun lobby. In fact, Congress never gave FWS the authority to enter into a binding agreement with any private organization.

3. Indeed, the MOU is particularly notable in its failure to cite to any specific provision that purportedly would give FWS the authority to enter into the MOU. Instead, the MOU simply cites generally to several statutes, but none give FWS the authority to enter into an agreement like the MOU with a private organization like the NRA.

4. Moreover, even if FWS had the legal authority to enter into an agreement with the NRA, it violated the law by executing the MOU without undertaking any reasoned and detailed analysis of its potential consequences and before it notified the public and gave interested parties an opportunity to provide comments.

5. By its terms, the MOU purports to bind FWS to work with the NRA in perpetuity, or until the NRA agrees with FWS that it wishes to terminate the MOU. FWS has no ability to unilaterally terminate the MOU.

6. FWS's partnership with the NRA is particularly troubling. The NRA is not an organization that has an interest in conserving wildlife. Instead, the NRA is an organization that advocates for gun rights and an expansive interpretation of the Second Amendment and vigorously lobbies against gun control measures. Recently, the NRA has been the source of great controversy for its reactions to mass shootings, the departure of its president and top lobbyist, its leaders' alleged illegal corruption, lawsuits, and its filing for bankruptcy earlier this month.

7. The MOU can more properly be viewed as an ill-considered attempt by outgoing officials at FWS and the Department of the Interior to prop up a struggling organization that they support on their way out the door. But of course, this is not the responsibility of a publicly funded federal agency like FWS. In this sense, the MOU is a sham.

8. Plaintiff, Friends of Animals, files this action on its own behalf and on behalf of its adversely affected members to challenge the MOU.

9. For these reasons, and as further alleged below, Friends of Animals seeks a declaration from this Court that Defendants violated the APA and NEPA. Friends of Animals requests that the Court vacate the MOU.

**PARTIES**

10. Friends of Animals is a nonprofit, international animal advocacy organization, incorporated in the state of New York since 1957. Friends of Animals has nearly 200,000 members worldwide. Friends of Animals has its headquarters in Darien, Connecticut.

11. Friends of Animals and its members seek to free animals from cruelty and exploitation around the world, and to promote a respectful view of nonhuman, free-living and domestic animals. Friends of Animals is committed to protecting animals endangered by poaching, hunting, and other means of animal exploitation through a variety of advocacy programs. Friends of Animals keeps its members informed of animal advocacy issues by addressing them through its magazine, *ActionLine,* its website, social media, and public events. Friends of Animals regularly advocates for the rights of wildlife to live freely on public lands and against the expansion of hunting on public lands.

12.     Defendants' failure to comply with the APA and NEPA injures Friends of Animals' and its members. As an organization, Friends of Animals actively works to expose the myth that sport hunting, which the NRA purports to support, is a viable conservation tool. Friends of Animals regularly seeks recognition by FWS and other government agencies of the fact that sport hunting undermines legitimate conservation efforts. Friends of Animals has been successful in such efforts. The MOU however undermines Friends of Animals work and places the organization at a disadvantage in working on these issues with FWS and others in the future.

13.     Friends of Animals has members who regularly visit federal lands to view wildlife. The MOU harms these members in multiple ways. First, the MOU decreases the number of wildlife that these members will see and the odds that they will see certain species of wildlife at all, both because the increase in hunting will kill some animals and because it will scare others away. Second, the increase in hunting caused by the MOU will aesthetically harm members who do not wish to see hunters on public lands or hear gunshots while they are trying to view wildlife in their natural habitats. Friends of Animals and its members are also harmed because of their inability to participate in a full NEPA analysis.

14.     Defendant Scott de la Vega is sued in his official capacity as the acting Secretary of the Interior. As Secretary, Mr. de la Vega oversees all agencies within the Department of the Interior, including FWS.

15.     Defendant United States Fish & Wildlife Service is an agency within the Department of the Interior. It is the federal agency in charge of the regulation and conservation of wildlife and is responsible for ensuring that its actions comply with the requirements of federal law.

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question) and 5 U.S.C. §§ 701-706 (APA). This action presents a case and controversy arising under federal statutes, namely the APA and NEPA.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this district and a substantial part of the events giving rise to the claim occurred in this district.

18. This Court has authority to grant Plaintiff's requested relief under 5 U.S.C. §§ 701-706 for the APA claims.

## STATUTORY BACKGROUND

### A. The Administrative Procedure Act (APA)

19. The Administrative Procedure Act (APA) governs the internal procedures of administrative agencies, including how they interact with the public. The APA defines an "agency" broadly to mean "each authority of the Government of the United States," unless expressly excluded by the Act.

20. The APA authorizes a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," "without observance of procedure required by law." 5 U.S.C. § 706(2).

21. An agency action is arbitrary and capricious if the agency offers an explanation for the decision that is contrary to the evidence before it, acts so implausibly that it cannot be ascribed to a difference in view or agency expertise, fails

to consider an important aspect of the problem, or relies on factors which Congress had not intended it to consider.

22. FWS is not expressly excluded from the APA.

23. The APA defines "agency action" as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The APA defines "rule" to include "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." *Id.* § 551(4).

24. According to the APA, "rule making" is the "agency process for formulating, amending, or repealing a rule." *Id.* § 551(5).

25. Before making a rule, an agency must publish notice of the proposed rulemaking in the Federal Register, unless persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law. 5 U.S.C. § 553(b).

26. The notice must include: "(1) a statement of the time, place, and nature of public rule making proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved." *Id.* §§ 553(b)(1)-(3).

27. After notice, the agency must give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments. 5 U.S.C. § 553(c). The agency must publish notice of a substantive rule at least thirty days before its effective date, except for "(1) a substantive rule which grants or recognizes an exemption or relieves a restriction; (2) interpretative rules and

6

statements of policy; or (3) as otherwise provided by the agency for good cause found and published with the rule." *Id.* § 553(d).

**B. The National Environmental Policy Act (NEPA)**

28. NEPA, 42 U.S.C. § 4321 *et seq.*, is the basic charter for environmental protection in the United States. 40 C.F.R. § 1500.1(a).

29. NEPA was enacted by Congress for two purposes: to ensure that all federal agencies examine and account for the environmental impacts of their actions before acting, and to provide the public with a means to be informed and comment on the potential environmental impacts of proposed agency actions. *Id.* at § 1500.1. NEPA ensures that agencies will analyze the environmental impacts of any federal action they plan to undertake. 42 U.S.C. § 4332(2)(C).

30. An agency must consider "connected actions," "similar actions," and "cumulative actions" in addition to its proposed action when determining the necessary scope of its NEPA analysis. 40 C.F.R. § 1508.25(a).

31. An environmental impact statement (hereinafter "EIS") must be prepared if an action may "significantly affect the quality of the human environment." An EIS must discuss the environmental impact of a proposed action, adverse environmental effects that cannot be avoided if the proposal is implemented, and any alternatives to the proposed action. 42 U.S.C. § 4332(2)(C).

32. An EA is a "concise public document . . . that serves to briefly provide sufficient evidence and analysis for determining whether to prepare an environmental impact statement or a finding of no significant impact" and "[a]id an agency's compliance with the Act when no environmental impact statement is necessary." 40 C.F.R. § 1508.9.

33. An EA allows an agency to determine whether a proposed action requires preparation of an EIS or results in a finding of no significant impact.

34. An EA requires that an agency take a "hard look" at the potential consequences of its actions and provide adequate analysis and evidence to support a determination of whether to prepare an EIS. *See* 40 C.F.R. § 1501.5.

35. Agencies are required to involve the public in the process of preparing an EA. 40 C.F.R. § 1501.5(e).

36. If the impacts are determined to be insignificant by the agency, it must supply its reasoning and make its findings available to the public. 40 C.F.R. § 1501.6.

37. The FWS NEPA Reference Handbook holds that the agency must prepare an EA if the proposed action does not fall under a categorical exclusion or require an EIS, or when "the impacts of the action are uncertain, or when there are unresolved environmental issues."

38. The FWS NEPA Reference Handbook states that scoping should be used to design an EA. The objective of scoping is "to identify significant issues and to translate these into the purpose for the action, the needs for the action, the action or actions to be taken, alternatives to be considered in detail, alternatives not to be considered in detail, and impacts to be addressed."

39. A significant effect may still be present even if the federal agency believes the ultimate effect will be beneficial. 40 C.F.R. § 1508.27(b)(1).

## FACTUAL ALLEGATIONS

**A. FWS enters into the MOU with the NRA.**

40. On January 13, 2021, FWS entered into the MOU with the NRA.

41. The MOU provides that its purpose, among other things, "is to develop and expand a framework of cooperation among the Parties to promote the conservation of wildlife through active management of wildlife populations . . . [and] enhance and expand access to shooting ranges and hunting."

42. The MOU provides that "[t]hese activities complement each other and fit seamlessly into the respective missions of the Parties and serve the mutual interests of the Parties and the public."

43. The MOU falsely claims that "[t]he Parties have a common interest in the conservation of America's natural resources . . . ."

44. Under the MOU, FWS is obligated to "[w]ork with the NRA and its constituencies to promote participation in the Partners for Fish and Wildlife program."

45. The MOU also obligates FWS to "[w]ork with the NRA and its constituencies to develop science-based strategies for conservation in wildlife movement areas . . . ."

46. The MOU requires FWS to educate the public on the benefits of the Partners for Fish and Wildlife program and to "[s]howcase successful conservation efforts executed as part of the Partners for Fish and Wildlife program."

47. The MOU provides that, unless mutually modified or terminated, it shall continue in effect for a term of ten years and then will automatically renew for successive one-year terms.

48. Thus, the MOU continues in perpetuity unless and until the NRA agrees to terminate it.

49. The MOU gives FWS no ability to unilaterally terminate it under any circumstances.

50. The MOU identifies no specific statutory authority for FWS to enter into the MOU. Instead, the MOU cites generally to four different statutes and one Secretarial Order.

51. None of the four statutes cited gave FWS the authority to enter into the MOU with the NRA.

52. Prior to executing the MOU on January 13, 2021, FWS gave no notice to the public of its intent to enter into an agreement with the NRA.

53. FWS solicited no comments from the public

54. After executing the MOU, Director Skipwith touted it on her Twitter page, commenting that the MOU "preserv[es] our shared American heritage of hunting & recreating outdoors" and "increase[s] access to public lands & expand[s] hunting opportunities."

**B. The NRA does not seek to conserve wildlife.**

55. The NRA is the most prominent organization in the United States that advocates and lobbies for gun rights and against gun control measures. It is universally acknowledged as the nation's most powerful gun lobbying organization.

56. The NRA touts itself on its website as "widely recognized today as a major political force and as America's foremost defender of Second Amendment rights."

57. The NRA does not mention any conservation efforts on its website.

58. In recent years, the NRA has courted controversy and has fallen on hard times.

59. In August 2020, the Attorney General for the State of New York filed a lawsuit against the NRA seeking to dissolve the organization (the "Lawsuit").

60. The Lawsuit alleged that the NRA had illegally siphoned millions of dollars away from the mission of the nonprofit organization for extravagant personal expenses by senior executives.

61. The NRA filed for bankruptcy on January 15, 2021, two days after the MOU was executed.

62. Through the bankruptcy filing, the NRA is seeking to reincorporate in Texas and avoid potential legal liability in the Lawsuit.

## FIRST CAUSE OF ACTION
## (*ULTRA VIRES* ACTION)

63. Friends of Animals herein incorporates all allegations contained in the preceding paragraphs.

64. No provision of any of the laws cited in the MOU authorizes FWS to enter into an agreement with a private organization like the NRA.

65. No provision of any of the laws cited in the MOU authorizes FWS to enter into an agreement of potentially unlimited duration.

66. No provision of any of the laws cited in the MOU authorizes FWS to enter into a binding agreement that a new administration and new officials at the agency are not permitted to unilaterally change or revoke.

67. The MOU is in excess of statutory jurisdiction, authority, or limitations, or short of statutory right. Thus, the Defendants violated the APA, 5 U.S.C. § 706.

## SECOND CAUSE OF ACTION

**(VIOLATION OF THE APA – FAILURE TO UNDERTAKE NOTICE AND COMMENT)**

68. Friends of Animals herein incorporates all allegations contained in the preceding paragraphs.

69. In entering into the MOU, Defendants failed to comply with the notice and comment rulemaking requirements of the APA. 5 U.S.C. § 553.

70. The MOU is final agency action.

71. The MOU is a substantive rule.

72. Defendants failed to publish notice in the Federal Register or otherwise notify the public of their intent to enter into the MOU.

73. Defendants failed to solicit and review comments from the public on the MOU.

74. Defendants' actions are arbitrary, capricious, an abuse of discretion, otherwise not in accordance with the law, or without the observance of procedure required by law. As such, the New Rule should be set aside under the APA. 5 U.S.C. § 706.

## THIRD CAUSE OF ACTION

**(VIOLATION OF NEPA - FAILURE TO CONDUCT AN ENVIRONMENTAL ASSESSMENT, TAKE A HARD LOOK AT THE PROPOSED ACTION, OR CONSIDER REASONABLE ALTERNATIVES)**

75. Friends of Animals herein incorporates all allegations contained in the preceding paragraphs.

76. On the above facts and legal obligations, Defendants violated NEPA by failing to consider a reasonable range of alternatives, including not entering into the MOU at all

or entering into the MOU for a shorter period of time or with the option to unilaterally terminate it.

77. Defendants failed to provide any discussion of the potential environmental impacts of the MOU.

78. On the above facts and legal obligations, Defendants violated NEPA because they failed to take a hard look at the proposed action by not independently and adequately analyzing the direct, indirect, cumulative, and site-specific effects of entering into the MOU and potentially increasing the number of hunters and hunting opportunities.

79. The Defendants did not prepare an EA before entering into the MOU to determine if an EIS would be required or whether there would be a significant impact.

80. The Defendants did not provide a convincing statement of reasons for why the impacts would be insignificant enough to not require an EA or why the action is categorically excluded from the requirement of preparing an EA.

81. In entering into the MOU without considering a reasonable range of alternatives, without conducting a complete and independent analysis of the direct, indirect, cumulative, and site-specific impacts of the proposed action and alternative actions, and without presenting an EA or convincing statement of reasons for not completing an EA, Defendants' actions are arbitrary and capricious, an abuse of discretion, and not in accordance with law or required procedure, in violation of the APA. 5 U.S.C. § 706.

///
///
///

**REQUEST FOR RELIEF**

Friends of Animals respectfully requests that this Court enter judgment providing the following relief:

A. Declare that Defendants' MOU was in excess of statutory jurisdiction, authority, or limitations, or short of statutory right in violation of the APA;

B. Declare that Defendants' MOU and lack of EA to investigate the impacts of the MOU violated NEPA and its implementing rules and regulations;

C. Declare that Defendants violated the APA by failing to adhere to notice and comment rulemaking;

D. Vacate and remand the MOU back to FWS;

E. Award Plaintiff its reasonable costs, litigation expenses, and attorney fees associated with this litigation pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq.,* and/or all other applicable authorities; and/or

F. Grant such further relief as the Court deems just and equitable.


Dated: January 27, 2021                     Respectfully Submitted,

/s/ *Stephen Hernick*
Stephen Hernick
Senior Attorney
Friends of Animals Wildlife Law Program
7500 E. Arapahoe Road, Suite 385
Centennial, CO 80112
Tel: (720) 949-7791
Fax: 888-236-3303
shernick@friendsofanimals.org

Michael Ray Harris
Program Director
Friends of Animals Wildlife Law Program
7500 E. Arapahoe Road, Suite 385
Centennial, CO 80112
michaelharris@friendsofanimals.org